IN THE CIRCUIT COURT OF THE 13TH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

MATLAC, INC., a Delaware
corporation

    Plaintiff,

v.

                                                   Case No.

TEXTRON AVIATION, Inc. a
Kansas corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, MATLAC, INC., a Delaware corporation (hereinafter "Matlac"), by and through its undersigned counsel, hereby files this Complaint against TEXTRON AVIATION, INC., a Kansas corporation ("Textron"), and as grounds thereof, alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. This is an action sounding in breach of contract, unjust enrichment, negligence, gross negligence, and violation of Florida's Deceptive and Unfair Trade Practices seeking damages in excess of $30,000.00, exclusive of interest, attorneys' fees, and costs, and is otherwise within the subject matter jurisdiction of this Honorable Court.

2. Plaintiff, Matlac, is a Delaware corporation with its principal place of business located at 251 Little Falls Drive, Wilmington, Delaware 19808.

3. Defendant, Textron, a Kansas corporation, is a fixed base operator located in Tampa, Florida at the Tampa International Airport, which provides maintenance and repair services to the general aviation public.

1

4. This Court has personal jurisdiction over the Defendant because it conducts business extensively in Florida and has continuous and systematic contacts with Florida.

5. Accordingly, jurisdiction and venue are proper in the 13th Judicial Circuit in and for Hillsborough County, Florida, because Defendant maintains extensive, continuous and systematic contacts with Florida and all acts and omissions giving rise to this cause of action occurred in Hillsborough County, Florida.

6. All conditions precedent to this action have either occurred or have been waived.

## GENERAL ALLEGATIONS

7. Matlac is the registrant of one Hawker Beechcraft Corp. B200, with manufacturer's serial number BB-739, and Federal Aviation Administration ("FAA") registration number N217ML ("Aircraft").

8. On or about June 14, 2018, Matlac contracted with Textron to have certain maintenance, repair, and inspections performed on the Aircraft. A true and correct copy of the Contract is attached here as "**Exhibit A**".

9. In July 2018, Matlac delivered the Aircraft to Defendant, located at the Tampa International Airport for maintenance, repair and inspections.

10. Textron was obligated to perform the following services on the Aircraft: Phase 1 through 4 inspections of the Aircraft, replacement of left and right engine Flammable-Liquid-Carrying Hoses, and Pratt and Whitney PT6 Hot Section Inspections for both the left and right engines.

11. In addition, Textron was obligated to maintain, repair, and inspect the Aircraft in compliance with Pratt & Whitney's Engine Preservation Guidelines PT6A-61,

2

manufacturer specifications and in conformity with all requirements promulgated by the Federal Aviation Administration (the "FAA") pursuant to the Federal Aviation Regulations (the "FARs"), including maintaining the airworthiness of the Aircraft.

12. According to Defendant's initial inspection report of the subject Aircraft, no corrosion was found on/in either engine.

13. In fact, Defendant conducted a Hot Section Inspection of the engines during its possession of the Aircraft. Although, Defendant had complete access to the engines, Defendant failed to properly identify or otherwise advise of the presence of corrosion on the engines.

14. On or About November 16, 2019, Matlac obtained an Airworthiness Certificate for the Aircraft from the FAA in order to reposition the Aircraft from Tampa, Florida to Miami, Florida for further repairs.

15. Prior to its departure, the Aircraft had been in Textron's possession, care and control from July 2018 until November 2019, in which Textron failed to preserve the engines in compliance with the manufacturer's specifications and its obligation to Plaintiff.

16. During the ferry flight from Textron's Tampa maintenance facility to Miami, the Aircraft experienced catastrophic engine failure and was forced to make an emergency landing in Fort Meyers.

17. Thereafter, on December 6, 2019, the engines were inspected by Dallas Airmotive which noted corrosion and recommended further evaluation.

18. In April 2020, the engines were evaluated further by Prime Turbines which found significant corrosion in both engines.

19. It was determined that corrosion was the cause of the engine failure.

20. During the time that Defendant had possession of the Aircraft, for over one year and a half, Defendant failed to preserve the engines pursuant to the manufacturer's requirements and guidelines.

21. Defendant, which is in the business of maintaining, repairing, and inspecting aircrafts, was aware that an aircraft that has been inactive for any amount of time requires extensive engine preservation and knowingly made no preservation efforts on Matlac's Aircraft and knew that lack of engine preservation would cause engine corrosion and eventual detrimental engine failure.

22. Defendant knew that if an engine failed during a flight, there would be detrimental and absolute loss of life and property.

23. In addition to other ongoing damages arising from the negligent maintenance, repair and preservation of the Aircraft, the inability to utilize the Aircraft for any business purposes for more than one year and half has caused and continues to cause Matlac extensive and ongoing damages.

24. A demand for damages was made upon Defendant, but Defendant has failed and refused to comply with said demand.

25. In order to advance this action, Plaintiff has retained the undersigned counsel, and is obligated to pay its' attorneys' fees.

**COUNT I – BREACH OF CONTRACT**

26. Plaintiff, Matlac, hereby incorporates its allegations set forth in paragraphs 1 through 25 as if fully set forth herein.

27. Textron and Matlac entered into a valid contract for consideration for certain maintenance, repair and inspection of the Aircraft.

28. Matlac completed all of its duties and obligations under the contract, including but not limited to paying for inspection, report, and maintenance of the Aircraft.

29. Defendant has materially breached its contractual obligations to Matlac by failing to repair, inspect, and properly maintain the Aircraft and its component parts while the Aircraft was in Defendant's possession and care.

30. Matlac has sustained damage and loss as described above as a direct and proximate result of the Defendant's material breach of contract, of which due notice has been provided to Defendant, and Defendant has failed and refused to remedy.

WHEREFORE, Plaintiff, Matlac, respectfully requests that this Honorable Court find in its favor and award Plaintiff all recoverable damages, together with costs of this action, pre and post-judgment interest as permitted by law, together with such other and further relief this Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT

31. Plaintiff, Matlac, hereby incorporates its allegations set forth in paragraphs 1 through 25 as if fully set forth herein.

32. Matlac has conferred benefits on Defendant.

33. Defendant has knowledge and is aware of the benefits conferred upon it by Matlac.

34. Defendant has accepted and retained the benefits conferred by Plaintiff.

35. Under the circumstances, it would be inequitable for Defendant to retain the benefits conferred without paying the full value for them.

WHEREFORE, Plaintiff, Matlac, respectfully requests that this Honorable Court find in Plaintiff's favor and award all recoverable damages, together with costs of this

action, pre and post-judgment interest as permitted by law, together with such other and further relief this Court deems just and proper.

## COUNT III - NEGLIGENCE

36. Plaintiff, Matlac, hereby incorporates its allegations set forth in paragraphs 1 through 25 as if fully set forth herein.

37. Defendant had a duty to Matlac to thoroughly maintain and preserve the subject Aircraft in an airworthy condition, and failed to identify, document, report, repair or properly preserve the Aircraft and its component parts.

38. Defendant's breach of its duty of care in negligently inspecting the subject Aircraft, failing to completely report and document extensive damage found on the airplane, and failing to properly preserve pertinent parts of the Aircraft is the proximate cause of Matlac's damages, including loss of use of the Aircraft, loss of revenue and loss of anticipated profits from operation of the Aircraft due to downtime required for servicing the Aircraft and bringing it back to an airworthy condition.

39. As a result of Defendant's breach, Matlac has been damaged and continues to suffer damages.

40. Accordingly, Defendant is liable to Matlac for damages.

WHEREFORE, Plaintiff, Matlac, respectfully requests that this Honorable Court find in Plaintiff's favor and award all recoverable damages, together with costs of this action, pre and post-judgment interest as permitted by law, together with such other and further relief this Court deems just and proper.

## COUNT IV- GROSS NEGLIGENCE

41. Plaintiff, Matlac, hereby reincorporates its allegations set forth in paragraphs 1 through 25 as if fully set forth herein.

42. Defendant owed a duty to Matlac to thoroughly preserve and maintain the subject Aircraft and assure its airworthiness.

43. Defendant's actions and/or omissions in failing to maintain and preserve the Aircraft, which resulted in the engine failure which was the reason for an emergency landing, evince its reckless disregard for the safety of Matlac and the safety of the general public, and its acts and/or omissions are equivalent to an intentional act or a conscious indifference to the consequences of an act.

44. As a result of the foregoing, Matlac was injured and continues to be injured.

45. Matlac reserves the right to amend this cause of action to add punitive damages.

WHEREFORE, Plaintiff, Matlac, respectfully requests that this Honorable Court find in Plaintiff's favor and award all recoverable damages, together with costs of this action, pre and post-judgment interest as permitted by law, together with such other and further relief this Court deems just and proper.

## COUNT V – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES

42. Plaintiff, Matlac, hereby reincorporates its allegations set forth in paragraphs 1 through 25 as if fully set forth herein.

43. This is a claim brought pursuant to § 501.201 et seq., known as the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), for damages resulting from Defendant's deceptive, unfair, and unconscionable trade acts and practices.

44. At all material times to this action, Defendant was engaged in "trade and commerce" as defined in § 501.203, Fla. Stat., by advertising, soliciting, providing, and offering aircraft maintenance and inspection services.

45. The acts and omissions of Defendant alleged herein constitute unconscionable acts or practices, and unfair or deceptive acts or practices under § 501.204(1).

46. As a result of the unconscionable, unfair, and deceptive acts or practices of Defendant, Matlac has been damaged.

47. Matlac has engaged the services of the undersigned law firms to represent it in this matter and has agreed to pay reasonable attorneys' fees for the prosecution of this action. defendant is responsible for payment of these attorneys' fees under § 501.211, Fla. Stat.

WHEREFORE, Plaintiff, Matlac, demands judgment against Defendant for damages, interest, costs, expenses, attorneys' fees pursuant to § 501.211, Fla. Stat. and all other relief permitted by law.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury for all issues so triable.

**L. FORREST OWENS, P.A.**
**DBA AVIATION LEGAL COUNSEL**
Co-Counsel for Plaintiff
110 S.E. 6th Street, 17th Floor
Fort Lauderdale, FL 33301
Phone: (888) 635-9529
Facsimile: (888) 635-9529
Email: forrest@aviationlegalcounsel.com

*s/L. Forrest Owens*
L. Forrest Owens, P.A.

8

Florida Bar No. 38582

**AERO LAW CENTER**
Co-Counsel for Plaintiff
1100 Lee Wagener Dr., Ste. 312
Fort Lauderdale, FL 33315
Phone: (954) 400-4643
Facsimile: (954) 210-8431
Email: service@aerolawcenter.com

*s/Jonathan A. Ewing*
Jonathan A. Ewing, BCS
Florida Bar No. 040972
Nada Alfaily, Esq.
Florida Bar No. 1016145

# AFTERMARKET PROPOSAL

**Proposal Prepared For:**
Matlac, Inc.

**Address:**
Wilmington, DE

**Aircraft:**
Model: King Air
Serial: BB-739
Registration: N217ML

**Estimated Downtime:**
21 Business Days without discrepancies

**Estimated Lead Time:**
1 Week

**Proposal Prepared By:**
Ben Lassiter
Aftermarket Sales Manager
Mobile: 316.4940489
blassiter@txtav.com

**Service Station:**
Tampa - TPA
Repair Station Number: VG4R595M

**Appendices Attached:**
☒ Appendix A: Proposal Terms and Conditions
☐ Appendix B: Avionics Terms and Conditions
☐ Appendix C: Paint and Interior Terms and Conditions
☒ Appendix D: Acceptable Methods of Payment

— LEARN MORE —
ABOUT UNPARALLELED CUSTOMER CARE



  
TEXTRON AVIATION

U.S. +1.844.44.TXTAV  |  INTERNATIONAL +1.316.517.8270
© 2017 Textron Aviation Inc. All rights reserved.

EXHIBIT A



# A LETTER FROM KRIYA SHORTT

Dear Mr. Luis Nino,

Thank you for being a member of the Textron Aviation family. It is our privilege to offer you the services and tools you need to keep your mission on track.

I invite you to visit any of our company-owned service centers, where we deliver support that guarantees the best customer experience in the industry. Around the world, our staff remains committed to making aircraft maintenance convenient and ensuring that your ownership journey is successful.

My team and I are grateful for this opportunity to present a quote for our services. You will also find a contract enclosed for your review.

We look forward to doing business with you. To learn more about how we can keep you flying, please do not hesitate to contact me.

Sincerely,

*Kriya C Shortt*

**Kriya Shortt**
Senior Vice President, Customer Service
Textron Aviation



## ABOUT US

Textron Aviation brands have been propelling the industry toward the cutting edge for 90 years. To date, we have delivered more than 250,000 aircraft, exceeding 100 million flight hours. Our latest innovations include large-cabin business jets with the quietest interiors and lowest operating costs. We currently lead the market with the industry's broadest portfolio and most capable service network.

## WHY PARTNER WITH US

By choosing Textron Aviation, you receive an unmatched level of care and expertise from the very people who designed, manufactured and tested your aircraft. Our worldwide service centers and parts distribution warehouses coordinate to deliver the shortest downtime possible. Aircraft ownership has never been more convenient with our vast offering of customer resources.

- With 1CALL, one number puts you in touch with live support anytime. Day or night.
- The Customer Portal lets you manage your fleet, pay bills, download technical publications and much more. All from your mobile device. Sign up at my.txtav.com.
- Locate nearby service centers, mobile service units and support team members using the Textron Aviation Service app.
- Order from millions of OEM-quality parts online. Same-day availability keeps your mission on track.

## YOUR GLOBAL SERVICE NETWORK

Factory-direct service is available throughout the world, and we never stop working for you. Our highly experienced technicians operate year-round to keep you flying. Every service center possesses the full capabilities of the OEM, including engineering, manufacturing and supply chain management. In addition to our company-owned facilities, air response teams and more than 60 mobile service units deliver support no matter where you land.



- COMPANY-OWNED SERVICE FACILITY
- MOBILE SERVICE UNIT
- AUTHORIZED SERVICE FACILITY

Page 3
4/26/2018
DCN: Rev G: 05/12/2017

BB-739

Ben Lassiter
Sales Manager
Phone: 316.494.0489

Thank you for considering Textron Aviation Inc. to maintain your aircraft. We have a vested interest in making sure you are delighted with your Textron Aviation Service Center experience. As part of our commitment to exceptional service, we submit the following Service Proposal for your review. If any of the services or products described below is not as requested, please contact me immediately for a revision.

| DESCRIPTION | TOTAL |
|---|---|
| INSPECTIONS | $31,815 |
| PROPELLER | $25,600 |
| ENGINE | $38,864 |
| TOTAL | $96,279 |
| BB-739 Discount. BB-739 must arrive for input BEFORE June 18th 2018. | $5,000 |
| TOTAL Before Discount (excludes taxes, supplemental freight and hazmat fees). Pricing does not include Parts unless specific to the line item. | $96,279 |

Proposal Details

| DESCRIPTION | TOTAL |
|---|---|
| **INSPECTIONS** | |
| Perform Complete Phase 1 thru 4 Inspection. Parts and materials billed at actuals upon inspection. | $12,285 |
| Perform Logbook Research to determine Due Items & Work tasks | $2,100 |
| Perform 5 Year Left and Right Engine Flammable-Liquid-Carrying Hoses Replacement. Parts and materials billed at actuals upon inspection. | $1,680 |
| 6 Year Gear Inspection, Includes Paint Labor. Parts and materials billed at actuals upon inspection. | $15,750 |
| **INSPECTION SUBTOTAL** | **$31,815** |
| **PROPELLER SUBTOTAL** | |
| Perform 6 Year / 4000 Hour Left Propeller Overhauls IAW Manufactures written instructions labor includes balance of propellers . ***Note*** Pricing herein is a budgetary proposal. Should your Propellers show more significant signs of distress, parts and labor requirements, the pricing for services could increase. Customer will be notified as to any findings and additional cost if required. | $12,800 |
| Perform 6 Year / 4000 Hour Right Propeller Overhauls IAW Manufactures written instructions. ***Note*** Pricing herein is a budgetary proposal. Should your Propellers show more significant signs of distress, parts and labor requirements, the pricing for services could increase. Customer will be notified as to any findings and additional cost if required. | $12,800 |
| **Propeller SUBTOTAL** | **$25,600** |



Page 4
4/26/2018
DCN: Rev G: 05/12/2017
BB-739
Ben Lassiter
Sales Manager
Phone: 316.494.0489

## ENGINE

Perform Pratt and Whitney PT6 Left Engine **Hot Section** Inspection.
***Note*** Pricing herein is a budgetary proposal from Dallas Airmotive Should your hot sections show more significant signs of distress, parts and labor requirements, the pricing for services could increase. Customer will be notified as to any findings and additional cost if required. Dallas Airmotive Terms and Conditions Apply. — $19,432.00

Perform Pratt and Whitney PT6 Right Engine **Hot Section** Inspection.
***Note*** Pricing herein is a budgetary proposal from Dallas Airmotive Should your hot sections show more significant signs of distress, parts and labor requirements, the pricing for services could increase. Customer will be notified as to any findings and additional cost if required. Dallas Airmotive Terms and Conditions Apply. — $19,432.00

**ENGINE SUBTOTAL** — $38,864

**TOTAL** — $96,279
BB-739 Discount. BB-739 must arrive for input BEFORE June 18th 2018. — $5,000

Proposal Accepted by Customer

By: *[signature]*

Printed Name: Alfonso Matto

Title: Owner - Aircraft

Date: June 14, 2018.
MM/DD/YYYY

*[signature]*

Page 5
4/26/2018
DCN: Rev G: 05/12/2017    BB-739

Ben Lassiter
Sales Manager
Phone: 316.494.0489

# APPENDIX A: PROPOSAL TERMS AND CONDITIONS

The following terms and conditions apply to the Textron Aviation Inc. d/b/a Textron Aviation Service (TAS) Proposal and supplement the TAS Service Order Terms and Conditions, including Warranty, which apply to all parts and labor provided by TAS Service Centers. The party to whom this Proposal is addressed is referred to as "Customer."

**Pricing and Payment**

This proposal provides estimated pricing based on the specified work scope and may change with any material increases or decreases. The final charges may include additional charges associated with discrepancies not addressed within this proposal, additional work authorized by the customer in writing, or changes in parts prices due to vendor availability and price changes. Unless TAS agrees otherwise, changes in work scope may be authorized only by the person signing this Agreement or persons identified above. Prices quoted are in effect for a period of sixty (60) calendar days from date of the proposal but expire at the end of any calendar year (subject to being updated with the new year pricing).

All payments are due in US Dollars. A deposit of 25% of the proposal value is due upon acceptance of the proposal if (1) If Customer does not have sufficient credit available in a Textron Aviation open credit account; (2) the quote is for an Avionics Install or other airframe modification; or (3) the quote exceeds $100,000.00. This initial payment is required to secure the input of the aircraft, is non refundable and will be retained by TAS as liquidated damages if Customer cancels or materially changes scope or scheduling. Progress payments will also be required if and as specified in this proposal. Projects to be paid by insurance coverage must be paid in full in advance.

Acceptable methods of payment are wire transfer or certified bank draft. Unless otherwise agreed, payment is due in full upon completion of work and prior to release of the aircraft to the Customer.

**Additional/Supplemental Charges**

A charge of 3.5% of the discrepancy labor charges (not to exceed $2,500) will be added to all Customer invoices for miscellaneous materials and shop supplies. This charge covers items consumed during the work scope, including tape, solvents, shop cloths, sandpaper, cleaning compounds, brushes, etc.

Charges not reflected in the proposal and, which if applicable, will be added to the final invoice include (1) state sales or use tax; (2) freight (all over-and-above Customer-approved freight will be billed at actual cost); (3) over-and-above charges associated with exchange cores determined by the vendor to be beyond normal overhaul or economical repair; (4) discrepancies, including the treatment of corrosion, replacement parts and miscellaneous material associated with the above work, which will be corrected on a time and material basis subject to the prior review and approval of the Customer; (5) charges for rework of or additions to Customer-furnished engineering; (6) flight crews required for ground or flight testing; (7) any additional cost of work scope for aircraft modified outside of the Type Certificate, which may also incur additional downtime; (8) fuel, oil and insurance; (9) Customer-provided parts, if accepted by TAS, will incur an additional 35% charge; and (10) the cost of delivery of the aircraft away from the service facility, including the satisfaction of any foreign regulatory requirements.

TAS is not responsible for delays incurred as a result of forces beyond our control, including but not limited to delays caused by vendors, outside service providers, transportation services or FAA.

**Lead Time and Downtime**

Estimated downtime and lead time are shown above. Additional downtime may be required for changes to the scope of work or for other unforeseen circumstances and is not guaranteed. Lead time is subject to confirmation of space, time required for equipment procurement, and manpower availability.

Unless TAS agrees otherwise, changes in work scope may be authorized only by the person signing this Agreement or persons identified above, which will be documented in writing.

**Substitution**

When reasonably necessary to improve the quality, performance, reliability, stability, utility or appearance of the goods or materials supplied, TAS may incorporate changes in design, construction or installation and substitute equivalent equipment, accessories, parts or material.

**No Representations**

Customer agrees that Textron Aviation has made no representations (except as set out in this Agreement) and disclaims any oral or other representations regarding the value or performance of any third party STC's or other modifications or as to the value of the Aircraft after any modifications under this proposal, and agrees that no such representations shall be binding on Service Center.

Page 6
4/26/2018
DCN: Rev G: 05/12/2017

BB-739

Ben Lassiter
Sales Manager
Phone: 316.494.0489

# APPENDIX B: AVIONICS TERMS AND CONDITIONS

## Avionics Equipment Warranties

The Service Center warrants all workmanship on avionics installations for the term of six (6) months. Said warranty is limited to workmanship defects only.

New equipment warranties are governed by the Original Equipment Manufacturer (OEM). Please check your warranty certificate to determine warranty details. The Service Center will assist the Customer, where possible, for warranty claims on equipment installed at our facility.

## Avionics Installation

Aircraft engineering documents and diagrams must coincide with the current aircraft configuration. Incorrect wiring and/or inaccurate wiring diagrams and/or other related documents may result in additional time and material charges. The Customer shall be responsible for providing wiring diagrams and any related documents for existing installation prior to aircraft arrival for engineering planning.

A ground check of the avionics systems will be performed at aircraft induction. Any discrepancies discovered will be additional and charged on a time and material basis.

Existing aircraft systems and avionics equipment that are coupled to newly installed avionics systems must be operating to current factory standards and modification status, or additional repair costs will be applied.

Panel layout and/or block diagrams for new avionics equipment installation will be presented to the Customer for approval prior to modification.

Page 7
4/26/2018
DCN: Rev G: 05/12/2017

BB-739

Ben Lassiter
Sales Manager
Phone: 316.494.04

# APPENDIX C: PAINT AND INTERIOR TERMS AND CONDITIONS

### Interior Refurbishment

All floor plans, layouts, design/production drawings, fabric and color recommendations will be submitted to the Customer for approval. The Customer must approve the interior configuration prior to the commencement of work.

The existing certified emergency light system on the aircraft must comply with current regulations and be capable of accommodating the new interior floor plan. Any required change will be considered above and beyond this proposal and will be billed on a time and material basis.

A new Weight and Balance will be performed if required by approved maintenance manual. Any shift in CG will be noted.

Any and all repairs to substrate materials will be considered to be above and beyond this proposal and will be billed on a time and material basis.

New constructed cabinetry will be designed and built to meet pertaining FARs.

The FAA has varying interpretations of "Continuing Airworthiness" requirements. This proposal was prepared based on our Fire Blocking: All materials, workmanship and methods of construction shall be of the highest quality and will meet or exceed the standards established by the United States Federal Aviation Administration for aircraft operating under FAR Part 91 or Part 135. Endorse logbook to reflect fire blocking.

Seat certification will be in accordance with FAA FAR 25.561. Seat installation certification in accordance with FAA FAR 25.562, if required, will be charged on a time and material basis. Any discrepancies found on components affected during refurbishment or modification will repaired, replaced or adjusted with the Customer's prior written approval on a time and material basis.

### Paint

Due to unknown conditions, any corrosion treatment, repairs, excessive fiberglass rework, application or repair of anti-static paint, replacement of worn or corroded screws, flags or artwork will be performed on a time and material basis, unless previously agreed to by the Service Center. Application of metallic-based paints will be considered over and above.

Price includes removing not more than three (3) coats of finish and two (2) coats of primer. Additional stripping and sanding required to remove excess paint, primer and filler will be performed at an additional cost on a time and material basis. Customer will be advised if additional work is required. Labor and material associated with the removal or addition of weight to the flight controls as part of the balancing process will be performed at an additional cost on a time and material basis.

Due to vendor warranty validity, aircraft antennas will not be painted without a Customer-signed waiver excluding the Service Center of any liability of antenna failure.

Our paint facilities provide a two-year (2) limited warranty for aircraft strip and repaint of metal surfaces. A one-year (1) limited warranty is provided for aircraft with composite surfaces.

At time of delivery to the Customer, the Service Center warrants defects in materials used to perform the paint process, workmanship provided during the paint process, and discrepancies noted by the Customer at the time of acceptance.

Page 8
4/26/2018
DCN: Rev G: 05/12/2017

BB-739

Ben Lassiter
Sales Manager
Phone: 316.494.0489

Case 8:20-cv-02347-VMC-AEP Document 1-1 Filed 10/06/20 Page 18 of 18 PageID 22

## APPENDIX C: PAINT AND INTERIOR TERMS AND CONDITIONS (continued)

The Service Center does not warrant damage to the paint for exposure to adverse conditions such as accidents to the aircraft, hail, lightning, thunderstorms, corrosion from elements of the environment, excessive heat to thrust reversers caused by operation, excessive heat from exhaust, leaking rivets, cracks or separation of seams in the aircraft skin, normal wear from cleaning processes, incorrect cleaning process of painted areas, improper care of the painted surfaces, access panels and all areas required to be removed from aircraft for maintenance unless removed by a Textron Aviation company-owned facility.

All warranty work must be performed by our paint facilities unless agreed by the Customer and the Service Center that the warranty work may be provided by a different vendor. It is the responsibility of the Customer to schedule an appointment for all warranty work performed. Our Service Center is not responsible for cost of downtime to the aircraft for warranty work. The Service Center is not responsible for the associated cost of bringing the aircraft to our paint facility for warranty work to be performed. The work performed under warranty will be warranted for one (1) year when completed and applies only to the areas worked under the warranty or the balance of the original warranty, whichever is longer. All other areas will remain under the original warranty date.



Ben Lassiter
Sales Manager
Phone: 316.494.0489